This is a Sony computer. Mr. McAndrews. Good afternoon, your honors. Mr. Johnson, Mr. Bredin. We talk about big government. The government case is over and half the galley's gone here. I know this. Unlike my colleague arguing the first case this afternoon, I suspect that I have so little to say in so much time. And that's only because we're dealing here with a very targeted and discreet claim construction issue. Sometimes a dry issue, Chief Judge Aiken. Oh, it's scintillating. As another five boys with massive numbers of video games, I'm transfixed by the words attached and flexible. The subject matter. I can be still my heart. I didn't bring the prop, the Sony DualShock. I'm kind of, did the, yes. My colleagues have them, there you go. I'm feeling at home, thank you. You know how they work. You felt that tactile sensation. Now, procedurally, the claim construction process in this case was what I would refer to as a dream. After briefing the disputed claim terms, counsel for the parties, Mr. Johnson and myself, presented an oral argument to the district court in fewer than two hours. And then, from the bench, in real time, the judge dictated, with his hands clasped behind his head, staring at the ceiling, he dictated in final format to his clerk and the reporter his claim constructions. With all due respect, we don't need the color. You know what? I mean, all that it does is disparage the district court. I'm going to assume that he gave this every bit of responsibility I or any other judge would have and didn't do it in some lackadaisical fashion that you might be suggesting. And I don't think that that is where you should go. Get right to attach. Tell me what it means and why. Your Honor, very respectfully, I was complimenting the judge. I wish that more, more. I actually took that as a compliment. A judge would speak in the ability to give an opinion from a bench of this kind of detail and what he had done. I actually took that to mean the same. In that vein, I could just finish the remarks I was going to make. I suspect many of my colleagues will join me in saying that I wish that were the case in more patent infringement actions, the promptness and the attention given to the claim construction. I guess I thought since you're saying he got it all wrong, you were suggesting he didn't apply the correct process. I haven't gotten to that point yet. And he did construe many more claims than the single claim that we're addressing. You know you only have 12 minutes, right? I do, Your Honor. And as I said, I don't think I'm going to have a problem on this discrete issue. In any event, many parties in the council will probably join me in saying that we wish this would be the case in more patent infringement actions. Well, let's talk about flexible paths. Certainly. Now, I suppose you could say that I just caused that bench to flex by touching it there. But don't we understand this term in a more customary meaning to mean it noticeably flexes with ease? Perhaps on the issue of flexible path. You've taken me a little bit out of sequence, Your Honor, but to address that. There's no sequence. You've got to win on both of them. We do have to win on both. I think as our colleagues pointed out in the briefing, the dispositive issue in the court's judgment was only with respect to the first claim construction issue. And having read their argument in that regard in the response of the brief, I think that's certainly the case. That's the literal language of the court's order. If there is reversal as to... You don't think summary judgment was granted at all on the basis of flexible, just attached? Is that what you're saying? Just attached. That's correct, Your Honor. Okay. So you want us to address flexible, but you think that if you win on attached, we have to vacate and remand? I think depending on the interpretation of the case law, the court is inclined not to address that because it was not necessary. Okay. But the court's judgment, I would say... But I think you should address it anyway. The chief judge wanted you to... So were you basically admitting that flexible in the district court's construction was correct? No. As we argued in our brief, Judge Moore, we think the district court erred with respect to construing the term flexible bed. Flexible means rigid. Flexible can mean rigid. In fact, cropping some of the literal language of the patent itself, flexible is specifically used in the context of the term semi-rigid, which is to say something other than not rigid. And again, we cite that in a much shorter portion of our brief. Is it your view that how the degree of flexibility that an infringing product must have to fall within the claim term flexible is an issue of infringement for the jury and not an issue of claim construction? I'm trying to understand your view because clearly a steel beam, I grant summary judgment to a steel beam not being flexible, even though there is going to be some degree of flex, like the chief judge said with regard to the wood, although he's a superhero so he probably could flex this, but he's our chief judge. So anyway, if had he, or if had he, my goodness. So anyway, but no, the steel beam, I would have granted summary judgment, but that's not flexible. So I guess what I'm trying to figure out is where's the line between claim construction and infringement analysis for a jury, which part's law, which part's fact, and figuring out what flexible means. And I think his honor in the lower court addressed just that issue, Judge Moore. In fact, he said it sounds like we're bleeding a little bit in the summary judgment argument right here. And in that respect, I don't think that counsel disagrees on the point. The parties disagree. What I would say- I guess, what does that mean? Are you saying he inappropriately decided a factual component infringement in the way he decided flexible or- No, I think what he did was he construed the claims and then he made the observation, correctly so, that this issue, we are going to revisit this issue when, on summary judgment, when we pick up the dual shot controller and make a factual determination either as a matter of law or as one that is passed on to the fact-finding jury as an issue of infringement. The judge also did use the example of the steel beam. And certainly, I would not argue- I would argue that a steel beam is flexible, but in context. What context? Is it in a 20-ton brick press, in which case it's clearly flexible or it's flexing? I wouldn't think of a steel beam typically as being something that's flexible. And thankfully, we're not talking about a steel beam here. We're talking about something much different. Well, why isn't it attached to an exterior designation? The district court erred in several important respects with respect to construing the term attached to. First and foremost, there is no support whatsoever in the court's construction in the literal language of the claim itself. And we look back to this court's opinion, Anbach's opinion, and Phillips. But respect time and time again refers to attaching and embedding and makes distinctions. Some embodiments, the seat embodiment is an embedded embodiment. The steering wheel embodiment is an attached embodiment. There seems to be distinctions. Judge Rader, I think instead what the spec offers is a whole menu, a host of different options and embodiments. And I would not agree that those terms that refer to, fasten to, attach to, affix to, or embedded within are used by way of limitation in the specification. And in fact, I think the litany of examples that we give you, block quoting the specification on pages 13 and bridging to 14 of our brief, make that very point. Perhaps those are the examples that you're talking about. I don't think any of that language is limiting. I think to say is something attached to, is it affixed to, well certainly it is. Can something be embedded within without being attached to? It can be. The example that I used was a baby's rattle. In the forming process, the plastic welding and molding process at the factory, you have the little beads that make the rattle sound. They are clearly embedded within the outer body of the rattle, but they're not attached to the rattle. So, in the reply brief, you perhaps saw our simple graphics, the Venn diagram, to be precise. But I think it also not only illustrates the point, but I think it's very much borne out. I'm on page three, counsel. It's also borne out by the many examples in the specification that make very clear that the terms, certainly the terms affixed to and attached to, or located within, are used interchangeably. And to somehow now say that something that is referred to as attached to cannot be something that might also be embedded within, I think would be very inconsistent with this court's precedent on the issues of claim construction. It would certainly contradict the plain and ordinary language of claim one itself. Do you want to save your rebuttal time, Mr. McAndrews? I will. Thank you, Your Honor. Thank you. Mr. Johnson. May it please the court, I'm here representing Sony along with my partner, Dion Bregman. And I'd like to address the issue of flexible pad first, since the court addressed it first. I have with me a rigid plastic device. This is a Sony DualShock controller. This controller is hard plastic. And hard plastic, I submit, using common sense law or any logic you like, is not flexible. And the patent described a flexible foam structure repeatedly because it was trying to get a patent covering a seat. The court allowed the word flexible to encompass possibly a pad that could flex. To me, that would have to be one that would flex easily. I do not, and the court made it clear in the oral argument below, that simply pressing a button was not flexing the device. So I submit to you that there is no argument that can be made. But do you agree the district court did not expressly decide summary judgment on the basis of the word flexible? I would agree that the stipulation addressed a tax to the pad, yes. And that's what we raised in our brief. But if it's before the court, and the court, I wanted to make sure I made the point, if the court elects to rule. You think we could make an alternative ground for the holding? Or, I mean, I guess my- I think that because they raised it below, I would be foolish not to be prepared to address it. As we pointed out procedurally, we didn't think it was before you. But now that we're here, I want to make sure we cover it. Mr. Johnson? Yes. Am I correct that there's- I looked carefully. I didn't find a independent claim that used the word embedded. That's correct. So the word attached really does have to subsume both the affixed to the exterior surface and embedded within the surface embodiments, right? I disagree with that. Because it's all in the spec. It's clear that they have invented both. Right. Here is, from a claim differentiation standpoint, the critical issue you're on. Claim one required that the actuators be attached. Claim nine pens off of claim one, and it describes a variety of devices. Claim ten says those devices, and specifically this gear shifter or knob shifter, had to have an embedded device. How do we know that's right? If you look at the specification diagram 58C- I'm sorry, 38C and 38D, what you will see is, very clearly, in 38C, it's a controller that looks like this with the vibrator on the back attached to the outside. And it's described as attached to the exterior. 38D, if you would open it up, you would find the vibrators next to each handle. And it's described as embedded or contained therein. The two have to be different under those circumstances. Counselor, I don't understand your claim differentiation argument. If your suggestion is that claim ten is a dependent claim of claim nine, and claim nine pings back to claim one. That's correct. Well, but claim one, the word attached, can have a broader meaning. It could include embedded. And then claim ten, the dependent claim, is just the narrower dependent. If there was a broader meaning possible, it would be inconsistent with what is disclosed in the specification. There is nothing in the specification anywhere that says attached includes anything other than to the outside. Yeah, but we don't read limitations from a spec. That's true. But you have to give meaning to the word embedded. If your argument is right, if their argument is right, then attached and embedded mean the same thing. That cannot be the case. No, I don't think anybody says attached and embedded means the same thing. They don't say it. The district court didn't say it. You didn't say it. Embedded is narrower. Embedded means within. Attached can mean within or on the outside. I don't understand anyone arguing that they mean the same thing. If attached meant within, there would be language somewhere that supported that. There isn't. There is no language anywhere. Except the plain meaning, right? Correct. But a plain meaning has to be looked at in the context of what, in this case, the inventor who prosecuted this patent meant. I don't think that I agree with you. I think the specification can be used as in a lexicography sense to alter the plain meaning of the claim term. But the claims are the primary vehicle for defining the scope of the invention as claimed. That's correct. And so I think the specification, if there's a clear and unmistakable disavowal or a clear definition in the form of lexicography, can alter the otherwise plain meaning. That's correct. But it can't, absent that, it shouldn't be used to import limitations into the words. But you are not importing a limitation. You are describing, as they have done in their specification and in their drawings, exactly what was intended. That is to say, if you look at all of the drawings, and I would submit, if you go to drawing number 31 and through 37, what you see is everything that's attached is shaded on the outside. And if you look at 38 and the other drawings, everything that's invented is shaded differently. It is not the case that there were any examples where attached in an internal fashion is shaded that way or is claimed that way or is described that way. The specification actually uses the phrase attached to the exterior. Correct. However, if we gave the word attached the meaning that you wanted to have, then there would have been no need for the specification to explain that in the embodiment it's attached to the exterior because it would already mean that. Well, but if it's applying that logic, then the word embedded would never be used. What the specification says is either attached to or embedded within. If it was simply attached, you would not need the or embedded. Because it assumes embedded in the definition. Well, I don't think you can because they didn't. You can assume that, well, they meant attached and embedded to mean the same thing when it says attached or embedded. But in our kind of patent language dictionaries, we often use these much broader terms to subsume much narrower ones. Why didn't that happen here? I think it's because of the way this patent was prosecuted. That is to say it started out as an aftermarket product. That is to say he was attaching his vibrators. And to the extent that he wanted a different unit and tried to claim one that was done by manufacturer, he called it out separately. So it would not go from raw to narrow. It would be A or B. He was, well, except it isn't claimed that way. It's claimed as in with one flexible pad to which is attached. Various actuators. Right. But the flexible pad. Why isn't the pads within the seat attached to that seat even though they happen to be inside the foam? Because they claimed it two different ways. One, they have it embedded in the seat and gave you the example in the spec. And the other, they have it attached to the exterior and they attach it on the vest. And when it's embedded in the seat, they call it embedded. And when it was attached to the vest or to the exterior, they call it attached. Couldn't it just be because embedded is just a little clearer? I'm sorry? Couldn't they just have chosen to use embedded when they mean within as opposed to on the outside because it's just a little clearer? It's a narrower word that's just clearer. So when they're describing the embodiment, you know, if they said attached, maybe that's not quite as clear whether it's inside or outside. But when they say embedded, they know you're going to understand exactly what they mean. My response to that is you're asking me to speculate as to what they might have done. I can tell you only what they did. They used attached when they wanted it to refer to the outside. And they used embedded when they wanted it to refer to the inside. And I can explain to you why. Because when you open this device and you have a cell in it, it has to have whatever this is. If you want to call this the flexible pad, by this I'm talking about the controller. Or are you talking about some insulation that's on the inside? See, my personal view is flexible pad was never intended to cover the controller itself. But rather it was intended to cover the envelope for the actuator. And that makes a lot more sense because you're now looking at the seat itself. And that's why it makes perfect sense in the context of if I've got a wrapping either for a vest or for my chair, then where I locate my actuator maps, and if I'm going to attach it to an exterior in an aftermarket process, then I'm going to do it in a certain way. And that's why when you read that specification, they're always talking about hooks and eyes and tape. They're never saying, oh, this thing itself, this controller is flexible. It is intended to be a, quote, pad. They call it a game pad. I mean, that's my view, and I think it's not – it's certainly something I think is consistent with the proper way to read this claim. But regardless, they defined these terms in a specific way because they had a specific invention. But that's the whole question. Did they define the term in that narrow way? Did they narrow the plain meaning of attached in the specification? Quite frankly, I'm looking for a clear and unmistakable disavowal of the broader meaning, and that's what I'm not finding. The fact that they only used it in that context, maybe you've got a written description argument, but that's a fact question for a jury, not for me to decide. But I guess my problem is I just don't see that clear and unmistakable disavowal of what you have admitted is the plain meaning of the word. I think if you look at figure 38C and 38D, it doesn't get any clearer than that. 38C, they describe it. They describe it as column 43. Hold on, hold on. 38C, I want to go right to where you are. 43. Column 43. All right. Let me see if I can get you to the column 43 minus 24 through 35. They describe in 38C the solenoid or the vibrator attached. And they show, not only do they describe it, but it's depicted. You'll see the white controller with the lines in it. Now do the 38D. That's, again, a hard-shell controller with the actuators, one on the left and one on the right. They refer to that as contained therein and embedded. I don't know how I can get any clearer than that. But that, you would agree that doesn't amount to a clear and unmistakable disavowal, right? You're not arguing this amounts, this is the kind of language that states a clear disclaimer. No, I don't think it's a disclaimer. I think it's an accurate description of what they invented. The difference between a disclaimer and a disclaimer. I just want to be clear. So you think they're acting as their own lexicographer. Correct. They expressly defined attached to mean only an audio form. Absolutely. That's exactly what I mean. And I think when you look at the language, and given the fact that, as you understand in the record, that the inventor actually prosecuted the patent in a lot of stages, I think he knew exactly what he was doing and he said it. And that's why the court said that he had defined it by implication. Because you can surface this patent up one side and down the other, and there was nothing inconsistent with the position that we've taken. Except the claim language. The claim language says attached to a flexible patent. So now, if this is not a flexible patent, then what is it attached to? The problem I think we're having, Mr. Johnson, is of course by definition an invention is new. And you're defining something that's new using old words. And when you use those old words, they sometimes don't quite fit. And so as our rules have evolved, we say we're going to read those old words you're using to apply to something that never existed before. We're going to use those very broadly. Unless you disclaim it, you disavow it, you say it can't mean this. And I think Judge Moore is suggesting that we're having trouble finding that clear and unmistakable, to use our court's language, disavow saying that it can't be attached if it happens to be underneath the plastic instead of on top of the plastic that you're holding in your hand. Well, then I would say to you that not only are we not using old words, but that the technology he's describing had been around a long time. Game pads were around when I was a boy, and given the length of my hair and the color of it, that's a long time ago. However, I would submit that if the court looked at Bell Atlantic and the AcuMed case, and we are now arguing about what constitutes transverse as opposed to, I think you used the word vertical. And the court therein said, you have defined it by implication based upon the examples you used. That's what Bell Atlantic stands for. That's what AcuMed stands for. And I submit to you that there is no difference in this case. There is nothing about this technology which is either particularly unique or particularly exotic. We are not talking about building exotic databases or memory devices. We're talking about a game controller that worked by kids pressing buttons and getting a vibration. Nothing further. Thank you, Mr. Johnson. Mr. McAndrews, you have four and a half minutes. Simply as a curiosity, Your Honors, because Mr. Johnson pointed it out, as of the priority dates, the first filing dates of my client's patents, there were certainly hand controllers, game hand controllers. None of them had the tactile feedback that make these games so exciting for your five boys or my four daughters, though. And that's all new. It's a new and exciting technology. A couple of points. Picking up on the disavowal point that Judges Rader and Moore made, when Mr. Thorner intended to use words of limitation and consequence, that's exactly what he did. And he did so specifically with respect to the location of attachment to the game pad. Now, look at 38C and 38D that he showed us. You do seem to see an attachment of a pad in one instance and an embedding of the pad in the other. I do, Judge Rader, and if I might. How do you accommodate that into the language of Claim 1? Here's how I do it. I heard the remark by my colleague repeatedly. Nowhere is it used. Nowhere is it used. And what Mr. Johnson was talking about, of course, is nowhere does the specification use the term attached when we see an embodiment, a disclosed embodiment that has the actuators on the inside of the input control device, to speak more broadly, but in terms of the embodiment we're talking about inside the handheld game pad. For example, the game pad of 38C or 38D. Is it convenient for the court if I refer simply to a column number in the patent rather than the appendix? Yep. Okay, my electronic version, my battery died on me. If I could direct your attention to column 38, and if you would join me at line 47. That's a new paragraph starting with the word- Generally. Generally. I think putting aside the fact that we are not required under Phillips and its progeny to make such a showing, this excerpt dispositively makes the point that Judge Rader made a few moments ago, and that is embedded within is subsumed within the broader definition of attached to. It must be. But we do have something in the specification, and I read, quote, Generally, all of the peripheral tactile sensation actuators of figures 27 through 30, now, by way of review, those include the foam seat that your Honor referred to, are vibratory motors enclosed in plastic housings that have some simple attachment means for attaching the vibratory motors to a given control input device. A given control input device. We're not limiting, in this case, to the seat or to the handheld dual shock type input control device. But let me go on. This is illustrated in figures 37 to 40. And what is within that range of figures, your Honors? Figure 38C and figure 38D, which is one of the two figures you just asked me about, your Honor. So here we have an example that I think is consistent with common sense in the fundamental principles of Phillips. We look at the plain language of the claim. The word attached is self-evident, I would submit. We look at the other principles under Phillips. What's going on with Mr. Thorner in terms of him being a lexicographer? There is no express disavowal. But let's take it a step further. Phillips tells us the starting point is very frequently the specification. The specification tells us that these actuators, the right and the left hand and the solenoid in the middle, number 594, and figure 38D, which looks an awful lot like that dual shock, it tells us that those are attached to the control input device. So I'm sorry. There is no disavowal whatsoever. It's a broad interpretation and we should go with a broad interpretation. Your Honor, not only is there no disavowal, it is express support. And that's one of the points that we made in our briefs. Not only did the lower court read limitations. So you're saying each actuator is enclosed within a housing. They are enclosed within a housing and attached to by the express language of column 38, line 47, your Honor. I see my time is up. Are there further questions from the panel? Thank you, Mr. McAndrews. Thank you, Your Honor. I think that concludes our afternoon. All rise. The Honorable Court is adjourned.